# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ESSEX INSURANCE COMPANY, | ) |
| Plaintiff, | ) |
| | ) 15 C 2806 |
| v. | ) |
| | ) Judge John Z. Lee |
| THE STRUCTURAL SHOP, LTD., and BLUE MOON LOFTS CONDOMINIUM ASSOCIATION, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In September 2002, Blue Moon Lofts Condominium Association ("Blue Moon") sued The Structural Shop, Ltd. ("TSS") and others in the Circuit Court of Cook County for damages related to allegedly defective condominium improvements. Blue Moon eventually obtained a default judgment against TSS. And TSS's insurer, Essex Insurance Company ("Essex"), refused to indemnify TSS for the judgment. Blue Moon then settled its claims against TSS, and in doing so, received an assignment of TSS's rights in its insurance policy with Essex.

Essex initiated this action against TSS and Blue Moon, seeking a declaratory judgment that it has no duty to indemnify TSS for the Cook County default judgment. In turn, Blue Moon has asserted a counterclaim for a declaratory judgment to the contrary and has asserted a number of affirmative defenses, including that Essex should be estopped from denying coverage, that Essex waived its right to assert coverage defenses, and that its refusal to settle Blue Moon's case against TSS constituted bad faith. In support of its affirmative defenses, Blue Moon

has proffered the expert testimony of Olie R. Jolstad. In response, Essex has provided its own expert, William T. Cormack.

Each side has moved to bar the other's expert, and for the reasons that follow, the motions [123] [131] are granted in part and denied in part.

## **Legal Standard**

The admissibility of expert testimony is governed by Federal Rule of Evidence (FRE) 702 and the Supreme Court's seminal decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005) ("At this point, Rule 702 has superseded *Daubert*, but the standard of review that was established for *Daubert* challenges is still appropriate."). FRE 702 permits testimony by an expert—*i.e.*, someone with the requisite "knowledge, skill, experience, training, or education"—to help the trier of fact "understand the evidence or [ ] determine a fact in issue." Fed. R. Evid. 702. An expert witness is permitted to testify when (1) "the testimony is based on sufficient facts or data," (2) "the testimony is the product of reliable principles and methods," and (3) the expert "has reliably applied the principles and methods to the facts of the case." *Id.*

*Daubert* tasks the district court with serving as the evidentiary gatekeeper, ensuring that FRE 702's requirements of reliability and relevance are satisfied before allowing the finder of fact to hear the testimony of a proffered expert. *See Daubert*, 509 U.S. at 589; *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–49 (1999). District courts have broad discretion in determining the admissibility of

expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012).

In deciding whether to admit expert testimony, district courts employ a three-part framework, ascertaining whether: (1) the expert is qualified by knowledge, skill, experience, training, or education; (2) the reasoning or methodology underlying the expert's testimony is reliable; and (3) the expert's testimony will assist the trier of fact in understanding the evidence or determining a factual issue. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893–94 (7th Cir. 2011). The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Additionally, while "[a]n opinion is not objectionable just because it embraces an ultimate issue," Fed. R. Evid. 704, expert opinions that "merely tell the jury what result to reach" are inadmissible, *id.* 1972 advisory committee notes. Moreover, "Rule 704 . . . does not provide that witnesses' opinions as to the legal implications of conduct are admissible." *United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980); *see also Haley v. Gross*, 86 F.3d 630, 645 (7th Cir. 1996) (suggesting that it would be "improper[]" for an expert witness to "tell[] the jury why the defendants' conduct was illegal" or "testify regarding the dictates of [the] law"). Accordingly, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003). Experts "cannot testify about legal

3

issues on which the judge will instruct the jury." *United States v. Sinclair*, 74 F.3d 753, 758 n.1 (7th Cir. 1996).

## Analysis

**I.    Olie R. Jolstad**

Essex seeks to exclude the testimony of Blue Moon's expert, Olie R. Jolstad. Blue Moon proffers Jolstad's testimony as "permissible opinions on the insurance industry standards involved in the underlying matter." Blue Moon's Resp. Essex's Mot. Bar 2, ECF No. 127. Specifically, Jolstad's report contains three opinions: (1) "Essex failed to promptly and thoroughly investigate the claim/underlying lawsuit"; (2) "Essex knew, or should have known, consistent with industry custom and practice that it needed to promptly issue a reservation of rights (ROR), and/or file a declaratory action. It's [*sic*] failure to do so caused prejudice to TSS"; (3) "Essex engaged in unfair claims handling practices and/or breached its duty by failing to settle or negotiate a settlement of the case, and/or to advise its insured of the risk and consequences of not settling the case. This unreasonable delay and conduct was prejudicial to TSS." Essex's Mem. Supp. Mot. Bar, Ex. A ("Jolstad Report"), at 9, 13, 16, ECF No. 124-1. Jolstad supports these general opinions with additional opinion testimony, as discussed in greater detail below.

Essex seeks to bar all of Jolstad's testimony, arguing in pertinent part that "[t]he proffered opinions usurp this Court's role in deciding the legal standards which govern this case, and, should this matter proceed to trial, would usurp the jury's role in deciding the ultimate legal and factual questions." *Id.* at 3. For its

4

part, Blue Moon counters that Jolstad's opinions "are not legal opinions, nor do they provide conclusions on the ultimate issues," but instead discuss relevant customs, practices, and standards in the insurance industry. Blue Moon's Resp. Essex's Mot. Bar at 2.

Having reviewed Jolstad's report, the Court concludes that his testimony consists of some of both. Accordingly, while the Court will not permit Jolstad to testify as to the law that governs this case or the legal implications of Essex's conduct, it will permit Jolstad to testify as to customs, practices, and standards in the insurance industry and whether Essex's conduct met those standards. *Fed. Ins. Co. v. Arthur Andersen, LLP*, No. 1:03CV01174, 2006 WL 6555232, at *3 (N.D. Ill. Jan. 18, 2006) (explaining that "[e]vidence relating to the insurance industry's custom and practice of claims handling" is relevant and helpful to the jury, but barring testimony "as to the ultimate issues of whether [an insurer] breached its duty"); *see also Kearney v. Auto-Owners Ins. Co.*, No. 8:06-CV-595T24TGW, 2009 WL 3712343, at *10 (M.D. Fla. Nov. 5, 2009) (same); *Superior Aluminum Alloys, LLC v. U.S. Fire Ins. Co.*, No. 1:05-CV-207, 2007 WL 4618463, at *10 (N.D. Ind. June 25, 2007) (same).

Starting with Jolstad's first opinion, the Court will permit him to opine that Essex, in light of customs, practices, and standards in the insurance industry, failed to promptly and thoroughly investigate the claim or underlying lawsuit.[1] Such

---

[1] Insofar as the opinions offered by Jolstad at trial will be merely conclusory and untethered to industry customs, practices, and standards, the Court will entertain objections to their admissibility at that time. *Holman Enters. v. Fid. & Guar. Ins. Co.*, 563 F. Supp. 2d 467, 473 (D.N.J. 2008) (excluding the testimony of an expert concerning

5

testimony is helpful to the jury and does not go to legal requirements or the legal ramifications of Essex's conduct. *Lone Star Steakhouse & Saloon, Inc. v. Liberty Mut. Ins. Grp.*, 343 F. Supp. 2d 989, 1015 (D. Kan. 2004) (admitting expert testimony that "explain[ed] claims handling practices generally and insurance industry standards relating to timely investigations"); *see also Fed. Ins. Co.*, 2006 WL 6555232, at *3 (permitting expert testimony that an insurers' actions were untimely and unacceptable in light of industry custom and practice). Accordingly, Jolstad can testify as to what a "routine independent investigation" of a claim entails, Jolstad Report ¶ 47, or what a "reasonable and prudent adjuster under the same or similar circumstance[s]" would have done, *id.* ¶ 48, and may provide testimony as to general investigation practices in the industry and how Essex's conduct compared to those practices, *see id.* ¶¶ 47–55.

But, in offering these opinions, Jolstad cannot testify as to Essex's legal duties or opine that Essex violated these duties. *Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1202 (D. Colo. 2011) (barring expert testimony about an insurer "phrased in terms of a [*sic*] legal duties or obligations"); *Scottsdale Ins. Co. v. City of Waukegan*, 689 F. Supp. 2d 1018, 1023 (N.D. Ill. 2010) (excluding expert testimony interpreting the language of an insurance contract, as well as "opinions offer[ing] conclusions about [an insurer's] duties under the law"). Nor can he testify

---

insurance industry customs and standards where the expert did not "provid[e] any sort of gauge for the basis of his decision, either from his own extensive experience in the industry or some industry standards or guidelines"); *Superior Aluminum Alloys*, 2007 WL 4618463, at *10 (barring an expert's opinions where he "leap[t] to the conclusion that [an insurance broker's] behavior did not conform to some unspecified standard of care").

that the law imposes "the duty to investigate claims promptly, fairly, and independently," Jolstad Report ¶¶ 43, 46; offer his interpretation of the legal duties that arise under the relevant insurance policy, *id.* ¶¶ 44–45; or opine that Essex breached those duties, *id.* ¶ 51.

Turning to Jolstad's second opinion, the Court likewise will permit him to testify that, in light of customs, practices, and standards in the insurance industry, Essex failed to issue a reservation of rights, file a declaratory action, or both, in a timely manner. *Estate of Jorge Luis Arroyo, Jr. v. Infinity Indem. Ins. Co.*, No. 15-20548-CIV, 2016 WL 4506991, at *4 (S.D. Fla. Aug. 29, 2016) (holding that an expert's "thoughts on [an insurer's] omission of a reservation of rights are proper . . . so long as he does not proffer what the law states on issuing these documents"); *Lone Star*, 343 F. Supp. 2d at 1015 (permitting an expert to testify concerning insurance industry standards and practices relating to reservation of rights, and to testify that an insurer failed to send a reservation of rights letter in a timely manner). Thus, Jolstad may testify as to when a "prudent adjuster," in light of industry custom and practice, would have sent a reservation of rights letter or filed a declaratory action, or both. *E.g.*, Jolstad Report ¶ 59.

By contrast, Jolstad cannot testify that Essex had a legal obligation to send a reservation of rights letter or file a declaratory action at any particular time. *Scottsdale Ins. Co.*, 689 F. Supp. 2d at 1025 (barring expert testimony that an insurer violated a legal duty by failing to issue a timely reservation of rights); *see Travelers Indem. Co. v. Northrop Grumman Corp.*, No. 12 CIV. 3040 KBF, 2014 WL

7

464769, at *5 (S.D.N.Y. Jan. 28, 2014) (excluding testimony where an expert "attempt[ed] to couch a legal conclusion as to whether an [insurer's] excuse for late notice [was] sufficient as a matter of law in terms of industry custom and practice"). Furthermore, Jolstad may not testify as to what advice Essex "should have" given as a legal matter, Jolstad Report ¶ 60, or that it violated the law by failing to issue a timely ROR, *id.* ¶ 61. Nor can Jolstad testify as to the law of estoppel or waiver or the legal effect of Essex's actions, or opine that Essex is estopped from asserting or has waived defenses. Jolstad Report ¶¶ 65–67; *see Scottsdale Ins. Co.*, 689 F. Supp. 2d at 1024 (excluding expert testimony about "the legal defenses available" to an insurer as well as expert testimony that the insurer was estopped from invoking certain defenses); *Lone Star*, 343 F. Supp. 2d at 1015 (barring expert testimony that an insurer was "barred by estoppel from denying coverage").[2]

Additionally, Jolstad cannot testify as to what Ken Veach, President of TSS, believed or would have done had Essex acted differently. Jolstad Report ¶ 64.[3] Jolstad lacks personal knowledge of these issues and his speculative testimony would be unhelpful to the jury and be unduly prejudicial to Essex given its low

---

[2] Blue Moon's reference to *Florida Municipal Insurance Trust v. Village of Golf*, 850 So. 2d 544 (Fla. Dist. Ct. App. 2003), does not suggest otherwise. This case did not evaluate expert testimony under *Daubert*, which was not adopted in Florida until 2013. *See* Fla. Stat. § 90.702.

[3] As these opinions are the bases for Jolstad's opinion that Essex "caused prejudice to TSS," that opinion is barred as well. In any case, representatives of TSS are fully capable of describing what prejudice TSS experienced, and Jolstad's testimony would be unhelpful to the jury in this regard. It bears noting that Blue Moon did not respond to Essex's argument to exclude this testimony in its response brief, thereby waiving any argument on the issue. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as [Blue Moon has] done here—results in waiver.").

8

probity. *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (noting that "the whole point of *Daubert* is that experts can't 'speculate,'" and holding that an expert could not testify that a party "had a particular motive"); *Baldonado v. Wyeth*, No. 04 C 4312, 2012 WL 1802066, at *8 (N.D. Ill. May 17, 2012) (collecting cases excluding expert testimony as to parties' states of mind and motivations on the basis that such testimony was speculative and unhelpful); *cf. Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 461 (7th Cir. 2014) (observing that the testimony of an expert who acknowledged "that he had never worked with [Donald] Trump and had no idea what Trump's knowledge or state of mind was concerning the Trump Tower Chicago project" would not be admissible in relation to these subjects).

Finally, as for Jolstad's third opinion, the Court will permit him to testify as to general customs, practices, and standards in the insurance industry related to the handling of claims, the negotiation of settlements, and advising insured parties as to the consequences of settling. The Court will also permit Jolstad to opine on Essex's conduct in light of those customs, practices, and standards. *See Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1367 (N.D. Ga. 2014) (permitting expert testimony that, "in accordance with insurance standards and practices," an insurer "placed its own financial interest ahead of its insured when it rejected [a] settlement demand while it was pending on its face without first communicating with [the insured] as to the terms and conditions of the demand"). Thus, Jolstad may testify as to his experience in handling claims and settlement demands, Jolstad

Report ¶ 71, what a "reasonable adjuster" would have done, *id.* ¶ 72, and the typical expectations of insurer and insured regarding settlement advice and negotiations, *id.* ¶ 73.

The Court, however, will bar Jolstad from testifying that Essex breached a legal duty by failing to settle or negotiate a settlement, by failing to advise its insured of the consequences of failing to settle, or both, because this testimony improperly speaks to Essex's legal duties and the legal consequences of Essex's conduct. *See Baumann*, 836 F. Supp. 2d at 1202; *Scottsdale Ins. Co.*, 689 F. Supp. 2d at 1023–25. Accordingly, Jolstad may not testify that "Essex breached its duty to settle this case," Jolstad Report ¶ 70, that Essex had a legal "duty to advise . . . about the risk of not settling," *id.* ¶ 72, that Essex "breach[ed] [its] duty of the standard of care for an adjuster," *id.*, or that "Essex's unreasonable conduct here exposed TSS to this judgment," *id.* ¶ 75.[4]

## II. William T. Cormack

Blue Moon seeks to exclude the testimony of Essex's expert, William T Cormack. Essex offers Cormack's testimony to provide a contrary view on "customs and practices in the insurance industry as they relate to the issues in this case." Essex's Resp. Blue Moon's Mot. Bar 5, ECF No. 134. Cormack's report comprises the following opinions: (1) "Essex Properly Handled The Investigation"; (2) "Until The Evidence Created A Valid Coverage Issue, No Reservation Of Rights Was Needed Or Required By Essex"; (3)(A) "Attorney Palandech Acted Always As TSS's

---

[4]  As with his second opinion, Jolstad may not testify as to what, if any, prejudice TSS suffered as a result of Essex's actions.

10

Attorney And Agent And Never Acted As An Attorney Or Agent For Essex"; (3)(B) "Essex Had No Knowledge Of Any Valid Return Of Service Prior To October 15, 2014"; and (4) "Essex's Handling Of The Settlement Demand Of May 30, 2014, Fully Complied With Industry Custom And Practice." Blue Moon's Mot. Bar, Ex. A ("Cormack Report"), at 16, 18, 20–22, ECF No. 131-1.

As a preliminary matter, Blue Moon contends that "[a]ll Mr. Cormack [*sic*] opinions should [ ] be stricken, because they are not supported by any authoritative texts or treatises on claims handling," *id.* ¶ 3, and because he failed to provide adequate support for his opinions, Blue Moon's Reply Supp. Mot. Bar 1–2, ECF No. 135. But these arguments miss the mark. First, it is not necessary for an expert to proffer opinions based on texts or treatises; rather, an expert can be qualified and can opine solely on the basis of experience. *Walker v. Soo Line R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000) (affirming the admission of testimony by an expert who "demonstrated professional experience in the area" of expertise, because "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience"); *see Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010) ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data.").

Moreover, in light of the experience detailed in his report, Cormack Report at 5–6, and having reviewed Cormack's opinions, the Court is satisfied that his testimony amounts to more than his "say[] so," Blue Moon's Reply at 3.[5] Should

---

[5] The cases Blue Moon cites in its reply brief do not require a different result. *Huey v. United Parcel Service Inc.*, 165 F.3d 1084 (7th Cir. 1999), involved an expert who "did not

11

Blue Moon wish to probe the manner in which Cormack's experience forms his view of industry customs, practices, and standards, it may do so on cross-examination.[6] *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir. 1987) (affirming a district court's rejection of a motion to bar an expert qualified on the basis of experience because "he did not explain the procedures he used," and holding that the court properly instructed that "any questions regarding [the expert's] methodology or particular area of expertise [are] more appropriately addressed during cross-examination").

Blue Moon further challenges a number of Cormack's opinions on more specific grounds. First, Blue Moon objects to Cormack's assertion that, in handling its investigation of Blue Moon's suit against TSS, "Essex was fully justified in relying upon" a state court ruling because "[s]uch ruling constituted the law of the case." Cormack Report at 18. Blue Moon contends that testimony about the law of the case doctrine is improper legal opinion and reaches an improper legal conclusion. Blue Moon's Mot. Bar ¶¶ 4–5. In its response, Essex concedes this

---

attempt to reconstruct the underlying facts" on which he opined, "did not explain what field of knowledge" he had mastered or "how this knowledge was employed" in offering his testimony, and "[did] not describe the reasoning used to reach his conclusion." *Id.* at 1086. Cormack's testimony is not deficient in these ways. Similarly, the expert testimony in *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212 (7th Cir. 1997), was "full of vigorous assertion . . . [and] carefully tailored to support plaintiffs' position but devoid of analysis," such that the expert "must have allowed the lawyers to write an affidavit in his name." *Id.* at 1216. To be sure, Cormack's testimony supports Essex's position, but it is reasoned and offers more than conclusions without analysis.

[6] Additionally, just as with Jolstad, to the extent that Cormack intends to offer at trial opinions that are merely conclusory, the Court will entertain any objections at that time. *Holman Enters.*, 563 F. Supp. 2d at 473; *Superior Aluminum Alloys*, 2007 WL 4618463, at *10.

12

argument, but suggests that Cormack was relying on custom and practice in the industry, rather than the law of the case doctrine, in supporting this assertion. Blue Moon's Resp. at 6–7. Accordingly, the Court will bar Cormack from discussing the law of the case doctrine, but the Court will allow him to evaluate Essex's conduct in light of custom and practice in the industry when offering his opinion as to Essex's conduct.

Next, Blue Moon seeks to prohibit Cormack from testifying that Douglas Palandech, an attorney representing TSS in the underlying litigation, never served as an attorney or agent for Essex. Cormack Report at 20. Blue Moon maintains that "[t]his is also a legal opinion. It is well settled that the determination of whether a person is an attorney or agent is both a question of fact and/or law to be determined by judge or jury." Blue Moon's Mot. Bar ¶ 7. Essex counters that Cormack's opinion merely recites Palandech's deposition testimony, in which he denies serving as Essex's attorney. Essex's Resp. at 7–8. If this is the purpose of Cormack's testimony, the Court is at a loss to understand how Cormack's opinion would be helpful to the jury. Cormack's report states that in order to address Jolstad's testimony that Essex had engaged in unfair claims handling practices by failing to settle or negotiate a settlement of the case, "the role played by attorney Douglas Palandech must be clearly understood." Cormack Report at 20. But Cormack does not explain why.[7] Moreover, Blue Moon does not appear to contend

---

[7] Perhaps Cormack offered this testimony to rebut Jolstad's opinion that "a reasonable adjuster would have either contacted [counsel for Blue Moon] or have [*sic*] Mr. Palandech contact him and negotiate a settlement given the risks at that time." Jolstad Report ¶ 72. But Jolstad's testimony does not claim that Palandech was Essex's attorney or

13

that Palandech was Essex's attorney or agent. Thus, this opinion appears to be entirely unnecessary and potentially confusing, rather than helpful, to the jury.

It is not surprising then that numerous courts have excluded expert testimony as to the existence of agency and attorney-client relationships in similar circumstances. *See, e.g., Lipp v. Ginger C, L.L.C.*, No. 2:15-CV-04257-NKL, 2017 WL 277613, at *3–4 (W.D. Mo. Jan. 19, 2017) (excluding expert testimony that an agency relationship existed because a jury could apply the law as instructed to the facts); *Dorshimer v. Zonar Sys., Inc.*, No. CV 3:13-0553, 2016 WL 4179480, at *1 (M.D. Pa. Aug. 8, 2016) (same); *see Innes v. Howell Corp.*, 76 F.3d 702, 711 (6th Cir. 1996) (noting, in a different legal context, that "there is no authority to support plaintiff's contention that expert testimony is necessary to prove the *existence* of an attorney-client relationship"); *Great Am. Ins. Co. v. Dover & Dixon, P.A.*, 402 F. Supp. 2d 1012, 1022 (E.D. Ark. 2005) (rejecting expert testimony that "an attorney-client relationship existed between Plaintiffs and Defendants" because "[t]his Court doesn't require or permit so-called 'legal experts' to advise it on legal issues"). For these reasons, the Court will bar Cormack's testimony that Palandech never acted as an attorney or agent for Essex.

Blue Moon also objects to Cormack's testimony that Essex was not "required" to serve a reservation of rights on TSS because "no coverage problem had arisen at that time." Cormack Report at 18. Blue Moon argues that "[w]hile an expert may opine on an ROR letter, Mr. Cormack is misstating the law." Blue Moon's Mot. Bar

---

agent, and insofar as Essex wishes to challenge Jolstad's opinion, it need not establish the lack of an agency or attorney-client relationship in order to do so.

at 4. Essex, in response, characterizes Cormack's testimony as going to "custom and practice of an insurer's investigation and issuance of reservation of rights letters." Blue Moon's Resp. at 9. Just as with Jolstad's testimony, the Court will not permit Cormack to testify that, as a legal matter, Essex was not "required" to issue a reservation of rights letter, Cormack Report at 18, or that "[t]here existed no need for a reservation of rights" as a matter of law, *id.* at 19. By contrast, the Court will permit Cormack to testify that Essex was acting consistent with industry customs, practices, and standards when it decided not to serve a reservation of rights.

Finally, Blue Moon seeks to bar Cormack's testimony that Blue Moon's decision to issue a settlement demand figure "clearly indicated that Blue Moon expected that it would lose the case." Cormack Report at 23. Blue Moon views this testimony as improper speculation into Blue Moon's counsel's intent. Blue Moon's Mot. Bar ¶ 9. Essex offers a different interpretation, stating that "Cormack does not speculate as to how Blue Moon felt," but instead opines that the circumstances would lead "a reasonable insurer deciding how to approach settlement [to conclude] that the claimant felt its case to be weak." Essex's Resp. at 10–11. The Court will permit Cormack, just as it will Jolstad, to testify as to general customs, practices, and standards in the insurance industry as applied to claims handling, the negotiation of settlements, and advising insured parties as to the consequences of settling, as well as opine on Essex's conduct in light of those customs, practices, and standards. But the specific opinion at issue clearly speaks to Cormack's view of

15

Blue Moon's motivation, of which he has no personal knowledge. This specific opinion is therefore barred.

## Conclusion

For the foregoing reasons, and as described herein, Essex's motion to bar Jolstad's testimony [123] and Blue Moon's motion to bar Cormack's testimony [131] are granted in part and denied in part.

**IT IS SO ORDERED.**     ENTERED   5/22/17

*/s/ John Z. Lee*

_____
**John Z. Lee**
**United States District Judge**