# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| ESSEX INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 2806 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| THE STRUCTURAL SHOP, LTD., and | ) | |
| BLUE MOON LOFTS CONDOMINIUM | ) | |
| ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In 2014, Blue Moon Lofts Condominium Association ("Blue Moon") obtained a default judgment against The Structural Shop, Ltd. ("TSS"), in the Circuit Court of Cook County. While TSS's insurer, Essex Insurance Company ("Essex"), had earlier paid for TSS's defense in the matter, it refused to indemnify TSS for the judgment. Meanwhile, Blue Moon settled its claims against TSS and received from it an assignment of TSS's rights under its insurance policy with Essex.

In 2015, Essex filed this suit against TSS and Blue Moon, seeking a declaratory judgment that it had no duty to indemnify TSS for the Cook County default judgment. In turn, Blue Moon asserted a counterclaim for a declaratory judgment to the contrary, as well as a number of affirmative defenses,[1] including

---

[1] Blue Moon asserts both affirmative defenses and counterclaims for estoppel, equitable estoppel, waiver, and bad-faith failure to settle. The affirmative defenses and counterclaims are identical, as are the legal standards which apply to them on summary judgment, *see Myers v. Harold*, 279 F.Supp.3d 778, 798 (N.D. Ill. 2017). Accordingly, the Court does not distinguish between them and refers to them only as affirmative defenses.

that Essex should be estopped from denying coverage, that Essex waived its right to assert coverage defenses, and that Essex refused, in bad faith, to settle Blue Moon's case against TSS.

Each side has moved for summary judgment on Count I of Essex's Amended Complaint, which asserts that the policy does not provide coverage for TSS's insurance claim because the claim arose outside of the policy period. Essex[2] also moves for summary judgment on Blue Moon and TSS's[3] affirmative defenses. For the reasons that follow, Essex's motion [157] is granted in full and Blue Moon's motion [156] is denied.

## Background[4]

### I. The First Default Judgment

In September 2002, Blue Moon filed a lawsuit in the Circuit Court of Cook County against several defendants, including TSS, seeking damages arising out of the allegedly defective design and construction of Blue Moon Lofts. Blue Moon's LR 56.1(a)(3) Stmt. ("Blue Moon's LR Stmt.") ¶ 1, ECF No. 156-10. On May 30, 2003,

---

[2]    Evanston Insurance Company ("Evanston"), successor by merger to Essex Insurance Company, now brings this summary judgment motion on Essex's behalf. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 1, ECF No. 158. The Court refers to Evanston as "Essex" throughout.

[3]    Although it is undisputed that TSS assigned its rights under the policy to Blue Moon, *see* Blue Moon's Resp. Pl.'s LR Stmt. ¶ 36, ECF No. 167-1, TSS filed an appearance in the case and answered Essex's amended complaint, asserting identical affirmative defenses and counterclaims to those asserted by Blue Moon. *Compare* TSS's Ans. at 4–13, ECF No. 67, *with* Blue Moon's Ans. at 4–13, ECF No. 48. Essex moves for summary judgment on both TSS and Blue Moon's affirmative defenses and counterclaims. Pl.'s Mem. at 2 n.1.

[4]    The following facts are undisputed or deemed admitted unless otherwise noted.

Blue Moon filed a motion for default against TSS, presenting evidence of service on Thomas H. Donahue, who was identified in an affidavit by a special process server as TSS's registered agent. *Id.* ¶ 2; Pl.'s Resp. Blue Moon's LR Stmt., Ex. Affidavit of Special Process Server, ECF No. 159-4. The circuit court granted the motion, finding that TSS was "in default for their failure to appear, answer or otherwise plead." *Id.* ¶ 3. Six years later, in 2009, the court entered a default judgment against TSS, and in favor of Blue Moon, in the amount of $1,356,435 plus costs. *Id.* ¶ 4.

## II.     The Essex Insurance Policy

Essex issued professional liability insurance to TSS that covered claims first made against TSS during the period from May 10, 2012, to May 10, 2013. Blue Moon's LR Stmt. ¶ 6. Under the policy, a "claim" was defined as "the insured's receipt" of either "a written demand for money damages" or "the service of suit or institution of arbitration proceedings against the Insured." Pl.'s LR 56.1(b)(3)(C) Stmt. ("Pl.'s LR Stmt.") ¶ 10, ECF No. 159; Am. Compl. Ex. H, Insurance Policy at 14, ECF No. 21-8.

The policy also provided that Essex "shall select defense counsel," except in situations involving conflicts of interest between Essex and the insured, Insurance Policy at 18, and that Essex "shall not settle any Claim without the prior written consent" of TSS, Pl.'s LR Stmt. ¶ 37.

## III.     TSS's Actions Prior to Notifying Essex of the Insurance Claim

On August 9, 2012, Blue Moon's counsel contacted Douglas Palandech, who was TSS's registered agent at that time, to discuss collection of the 2009 default

judgment. Pl.'s LR Stmt. ¶ 1. Palandech then notified TSS's principal, Ken Veach, who found no evidence of the underlying litigation, default order, or default judgment in TSS's records. *Id.* ¶¶ 2, 3. Palandech had previously represented TSS in third-party claims, contract and professional responsibility matters, and Veach engaged Palandech to vacate the default judgment. *Id.* ¶ 2; Pl.'s Resp. Blue Moon's LR Stmt., Ex. D, Palandech Dep.[5] at 44:24–45:3, ECF No. 159-4.

On September 7, 2012, TSS filed a petition in the circuit court to vacate the default order and default judgment. *Id.* ¶ 8. The petition argued that Donahue was not TSS's registered agent at the time of service and, therefore, that TSS had never been served during the underlying litigation. *Id.* Attached to the petition was an affidavit signed by Veach, averring that Donahue had "never been a registered agent, shareholder, agent or employee" of TSS. *Id.* ¶ 9. On November 29, 2012, the court granted the petition and vacated the default judgment. Blue Moon's LR Stmt. ¶ 5.

## IV. Essex Initiates Defense of TSS

TSS notified Essex of the litigation proceedings on December 10, 2012, and Essex acknowledged receipt of this information the next day. *Id.* ¶¶ 8, 9. Essex was

---

[5] The parties provide only portions of the Palandech Deposition. The following pages appear in Pl.'s Resp. Blue Moon's LR Stmt., Ex. D, ECF No. 159-4: 2–5, 10–17, 30–33, 42–45, 50–53, 58–61, 78–105, 134–137, 146–149, 162–165, 186–193, and 198–201. The following additional pages appear in Blue Moon's Mot. Summ. J., Ex. A, ECF No. 156-1: 20, 22, 23, 214, and 215. Defendants also present excerpts from the Palandech Deposition as Ex. 5 to Blue Moon's Reply Supp. Mot. Summ. J., but those excerpts are duplicative of pages appearing as Resp. Blue Moon's LR Stmt., Ex. D. Where the Court refers to "Palandech Dep.," this includes the combination of these excerpts.

aware from the beginning that service of process was at issue and that the underlying lawsuit was filed in 2002. *Id.* ¶¶ 10, 11.

At the time, Essex used the company Markel as its claims servicer. Pl.'s Resp. Blue Moon's LR Stmt., Ex. C, Sheehan Dep.[6] at 18:20–24, ECF No. 159-3. There were two Markel claims managers responsible for the TSS claim file: Denis Sheehan, until March 2013, and Melanie Brown, who followed Sheehan. Blue Moon's LR 56.1(b)(3)(C) Stmt. ¶ 1, ECF No. 167-1; Blue Moon's Reply Supp. Mot. Summ. J. ("Blue Moon's Reply"), Ex. 2, Brown Dep.[7] at 55:4–12, ECF No. 167-2.

According to Palandech, he was "the attorney representing The Structural Shop," and as Essex was the insurance carrier for TSS, he was "reporting to [Essex] about what the defense is about and what we are doing in the defense." Palandech Dep. at 199:3–14. Palandech testified that his relationship with TSS predated his relationship with Essex but that he had been involved in ten to twelve matters with Markel or Essex. *Id.* at 137:1–24.

In February 2013, Palandech informed Sheehan that he had received an invoice from Tri-County Investigations, a process server, for service upon TSS's

---

[6] The parties provide only portions of the Sheehan Deposition. The following pages appear in Pl.'s Resp. Blue Moon's LR Stmt., Ex. C, ECF No. 159-3: 2–4, 18, 46, 127, and 128. The following additional pages appear in Blue Moon's Mot. Summ. J., Ex. D, ECF No. 156-4: 31, 33, 127. The following additional pages appear as Blue Moon's Reply Supp. Summ. J, Ex. 3, ECF No. 167-3: 67, 101, 102, 117. Where the Court refers to "Sheehan Dep.," this includes the combination of these excerpts.

[7] The parties provide only portions of the Brown Deposition. The following pages appear in Pl.'s Resp. Blue Moon's LR Stmt., Ex. B, ECF No. 159-2: 2–5, 10–13, 78–81, 94–101, 110–113, and 130–137. The following additional pages appear in Blue Moon's Mot. Summ. J., Ex. B, ECF No. 156-2: 34, 37, 45, 82, 167–70. The following additional pages appear as Blue Moon's Reply Supp. Summ. J, Ex. 2, ECF No. 167-2: 55 and 67. Where the Court refers to "Brown Dep.," this includes the combination of these excerpts.

registered agent in November 2002. Blue Moon's LR Stmt. ¶ 13; Sheehan Dep. at 127:8–22; *see also id.* at 18:20–24, 46:3–24. The invoice indicated that Tri-County had received $60 for serving TSS with summons in 2002. Pl.'s LR Stmt. ¶ 16. In a February 8, 2013, email from another attorney at Palandech's firm to Veach, on which Sheehan was copied, the attorney contended that the invoice did not show that service was effectuated, and was instead only "an unverified source of very flimsy information." Pl.'s Resp. Blue Moon's LR Stmt., Ex. F, Kern 2/8/13 Email at ESSEX_000867, ECF No. 159-6.

On March 11, 2013, an attorney at Palandech's firm emailed Veach, informing him that Blue Moon's counsel had indicated that whether service had properly been effectuated was still being investigated and that the judge in the underlying case was open to revisiting his order vacating the default judgment if evidence of service was presented. Blue Moon's Mot. Summ. J., Ex. G, Kern 3/11/2013 Email, ECF No. 156-7. Palandech, who had been copied on that email, *see id.*, testified that a copy of the email was eventually sent to Brown on April 1, 2013. Palandech Dep. at 164:14–165:9.

## V. Settlement Discussions

In May 2014, Blue Moon offered to settle the state court case in exchange for $25,000, Blue Moon's LR Stmt. ¶ 17, which happened to be the amount of TSS's deductible on its insurance policy with Essex, *id.* ¶ 16. Palandech had apparently earlier offered a mutual "walk-away" from the case. *See* Pl.'s Resp. Blue Moon's LR 56.1 Stmt., Ex. D, Palandech 6/2/2014 Email, ECF No. 159-2. According to Palandech, he relayed the $25,000 offer to Veach and Brown, recommending that

TSS reject the offer and instead file a motion to dismiss. Palandech Dep. at 80:7–82:9. Palandech further testified that, by May 30, 2014, both Brown and Veach agreed with his recommendation: Veach replied that he was "firmly a NO!" on the offer, *see* Pl.'s LR Stmt. ¶ 19, and Melanie Brown responded that Palandech should "go ahead and file the motion to dismiss." Palandech Dep. at 86:22–87:2.

After the $25,000 offer was rejected, Blue Moon's counsel told Palandech on June 1, 2014, that TSS "needs to make a cash offer and we will try to work this out with you guys." Pl.'s LR Stmt. ¶ 20. Blue Moon again reached out to Palandech on June 4, 2014, stating that Blue Moon's prior counsel "insists there was service [on TSS] and is urging to get the judgment reinstated, etc. I can work with you but you need to make an offer." *Id.* ¶ 22. Palandech testified that he could not specifically remember discussing these emails with Brown, though he stated that, at the time, they were in regular conversations about multiple matters. Palandech Dep. at 90:13–92:24.

Palandech testified that he was not authorized to make a settlement for money to be paid out by Essex without its permission, *id.* at 52:15–19, and that, to his recollection, neither he nor anyone at his firm had asked Essex for permission for any settlement, *id.* at 52:20–53:16.

On July 29, 2014, Blue Moon's counsel sent Palandech a copy of the special process server's affidavit of service on Thomas Donahue and informed him that the Secretary of State had confirmed that Donahue had indeed been the registered agent at the time of service. Blue Moon's LR Stmt. ¶ 21; Palandech Dep. at 93:8–23; Pl.'s Resp. Blue Moon's LR Stmt., Ex. D, Ralsak 7/29/2014 Email, ECF No. 159-

4. The email also stated that Blue Moon would seek to reinstate the default judgment, but also suggested that before it did so, the parties should "see if the[re] is a basis to resolve this matter." Ralsak 7/29/2014 Email.

According to Palandech, he had not believed that service was truly an issue until he received this email. Pl.'s LR Stmt. ¶ 25. Blue Moon's counsel, for his part, emailed Palandech stating that he had "basically believed" TSS's contention that service had not been effectuated because TSS had filed affidavits attesting to that fact. *Id.* ¶ 26.

## VI. Reinstating the Judgment

On August 6, 2014, Blue Moon filed a motion in the state circuit court to reinstate the default judgment, with a copy of the special process server's affidavit attached, Pl.'s LR Stmt. ¶ 28.

According to Brown, based on a review of her claim notes, she learned of the motion to reinstate the default judgment only on or around October 15, 2014. Brown Dep. at 99:24–100:7. Palandech, in contrast, testified that he received the motion to reinstate the default judgment on August 6, "and would have advised Essex and [Veach] about the motion." Palandech Dep. at 188:7–12.

The circuit court granted the motion to reinstate the default judgment on November 4, 2014, finding that the certified records of the Secretary of State demonstrated that Thomas Donahue was, in fact, the registered agent for TSS at the time of service in 2002. Blue Moon's LR Stmt. ¶ 28.

On November 11, 2014, Palandech's firm emailed Veach and Brown with a recommendation that TSS file a petition for relief from final judgment. Blue Moon's

Mot. Summ. J., Ex. I, Sheaffer 11/11/2014 email, ECF No. 156-9. Brown gave a one-line response: "Please prepare the Petition for Relief from Final Judgment." Blue Moon's Mot. Summ. J., Ex. I, Brown 11/11/2014 Email, ECF No. 156-9; Blue Moon's LR Stmt. ¶ 27. TSS filed a petition to vacate the November 4, 2014 order on November 26, 2014. Pl.'s LR Stmt. ¶ 31. On March 5, 2015, the circuit court denied the motion and entered an order finding that TSS was properly served on November 7, 2002. *Id.* ¶ 32.

Essex then sent a reservation of rights letter to TSS on March 26, 2015. Blue Moon's LR Stmt. ¶ 29. The letter stated, in relevant part, that Essex would continue to provide a defense to TSS through the appeal of the March 5, 2015, order. Pl.'s LR Stmt. ¶ 34. The letter further stated that Essex did not owe indemnity coverage to TSS because the "claim" was first made in 2002, before the policy was in effect. *Id.* ¶ 35.

Sometime thereafter, once Palandech had already filed the notice of appeal of the March 5, 2015, order, *see* Palandech Dep. at 22:3–23:11, Essex hired a different firm to handle the appeal. Blue Moon's LR Stmt. ¶ 39. On May 1, 2015, TSS and Blue Moon entered into a settlement agreement that included an assignment to Blue Moon of any rights that TSS had under its policy with Essex. Pl.'s LR Stmt. ¶ 36.

Essex filed this action on March 31, 2015. Blue Moon's LR Stmt. ¶ 30. In Count I, Essex seeks declaratory judgment that the insurance claim arose outside of the policy period, that the policy does not provide coverage for the claim, and that Essex has no duty to defend or indemnify TSS for the claim or the underlying

litigation. Am. Compl. ¶ 35, ECF No. 21. The parties do not dispute that the policy at issue covers claims brought against TSS between May 10, 2012, and May 10, 2013, Blue Moon's LR Stmt. ¶ 6., and that, under the policy, a claim is considered to have been brought when, *inter alia,* the insured receives service of a suit, Pl.'s LR Stmt. ¶ 10. Moreover, the parties agree that TSS was properly served in 2002. *See* Pl.'s Resp. Blue Moon's LR Stmt. ¶ 22. There is therefore no dispute that the insurance claim arose outside of the policy period.

## Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). In reviewing a motion for summary judgment, the Court gives the nonmoving party "the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). The Court must not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

<u>Analysis</u>

Blue Moon now moves for summary judgment on Count I of Essex's amended complaint based upon Blue Moon's affirmative defense of estoppel. Blue Moon's Am. Mem. Supp. Mot. Summ. J. ("Blue Moon's Mem.") at 2, ECF No. 156-11. Essex cross-moves for summary judgment on Count I, as well as on Blue Moon's affirmative defenses of estoppel, equitable estoppel, waiver, and bad-faith failure to settle. Pl.'s Mem. Supp. Mot. Summ. J. ("Pl.'s Mem.") at 2 n.1, ECF No. 158.

## I. Estoppel

### A. Two Distinct Forms of Estoppel

Blue Moon contends that Essex is estopped from raising coverage defenses because it neither timely reserved its rights nor timely filed a declaratory judgment action. Blue Moon's Mem. at 6. But Illinois law recognizes two distinct forms of "estoppel" when analyzing an insurer's duty to defend under an insurance policy. *See Ill. Sch. Dist. Agency v. Pac. Ins. Co.*, 471 F.3d 714, 720 (7th Cir. 2006); *Emp'rs Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1138 (Ill. 1999). And, as will be seen below, only one is relevant here.[8]

### 1. "General" or "Contractual" Estoppel

The first type of estoppel follows from the rule in Illinois that, where an "underlying complaint[ ] allege[s] facts within or potentially within policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless,

---

[8]    Blue Moon did not distinguish between the two forms of estoppel in its initial memorandum supporting summary judgment, but on reply, recognizes the two distinct forms of estoppel and, confusingly, contends that both forms apply. *See* Blue Moon's Reply at 1–2, ECF No. 167.

false, or fraudulent." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). Although no standard nomenclature has developed, this first type of estoppel has been called "contractual estoppel," *see Ill. Sch. Dist. Agency*, 471 F.3d at 720, or "the general rule" of estoppel, *see Nationwide Mut. Ins. Co. v. Filos*, 673 N.E.2d 1099, 1103 (Ill. App. Ct. 1996).

According to this rule, an insurer who doubts that a complaint asserts a claim within its policy must either "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." *Ehlco*, 708 N.E.2d at 1134–35. If the insurer fails to take one of those actions on a claim where the duty to defend applied, and is later determined to have wrongfully denied coverage, estoppel prevents the insurer from raising policy defenses to coverage. *Id.* at 1135.

"[T]he duty to defend is broader than the duty to pay," *Mgmt. Support Assocs. v. Union Indem. Ins. Co. of New York*, 473 N.E.2d 405, 411 (Ill. App. Ct. 1984). But even if a party has breached its duty to defend, the general rule is that this first form of estoppel "cannot be used to create primary liability or to increase coverage provided under an insurance policy." *Filos*, 673 N.E.2d at 1103; *see also Schuster v. Occidental Fire & Cas. Co. of N. Amer.*, 30 N.E.3d 458, 467–68 (Ill. App. Ct. 2015) (collecting cases). Instead, it acts in a more limited fashion by "preclud[ing] an insurer from relying on a condition in which the insured has forfeited coverage, such as by filing a false statement" or tendering late notice of a claim.[9] *Schuster*, 30

[9]     Illinois courts have distinguished the assertion of such coverage defenses from circumstances "where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage." *Ehlco*, 708 N.E.2d at 1135. This is

N.E.3d at 467; *see also, e.g., Ehlco,* 708 N.E.2d at 1134–36 (estopping an insurer from asserting the defense of late tender of a claim because the insurer had neither defended the insured under a reservation of rights nor litigated the matter in a declaratory judgment action).

### 2.    "Equitable" Estoppel

In contrast with the first type of estoppel, a second type of estoppel applies "if the insurer initially undertakes the duty to defend without reserving its rights, but later reserves rights or files a declaratory-judgment action." *United Farm Family Mut. Ins. Co. v. Frye*, 887 N.E.2d 783, 791 (Ill. App. 2008). While some courts have referred to this second type as an "exception" to the general rule, *see Filos*, 673 N.E.2d at 683, others have simply referred to it as "equitable estoppel" or a "different equitable estoppel," *see Ill. Sch. Dist.*, 471 F.3d at 720; *United Farm*, 887 N.E.2d at 647. *See also Ehlco,* 708 N.E.2d at 1138 (explaining that equitable estoppel, in contrast with contractual estoppel, "arises once an insurer actually assumes an insured's defense without reserving its rights").

Under equitable estoppel, if an insurer undertakes the defense of an action, and that undertaking results in some prejudice to the insured, an insurer may be estopped from asserting a defense that the policy did not cover the claim. *Essex Ins. Co. v. Stage 2, Inc.,* 14 F.3d 1178, 1182 (7th Cir. 1994) (citing *W. Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 879 (Ill. 1985)). Significantly, equitable estoppel sweeps more broadly than contractual estoppel and can even be applied to hold the insurer

---

because "[a]pplication of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered." *Id.*

responsible where coverage did not originally exist. *See Filos*, 673 N.E.2d at 1103–04.

In order to invoke equitable estoppel, "the insured must demonstrate that the insurer was actually or constructively aware of the facts or circumstances indicating noncoverage." *Filos*, 673 N.E.2d at 1104. Furthermore, "the insured must establish the elements of estoppel: that he was misled by an act or statement of [the insurer], he reasonably relied on the conduct or representation, and he was prejudiced thereby." *Filos*, 673 N.E.2d at 1104.

"Whether the insured has been prejudiced is a question of fact" that "rests with the insured and must be proved by clear, concise, and unequivocal evidence." *Brochu*, 475 N.E.2d at 879. "Prejudice will not be presumed from the insurer's mere entry of appearance and assumption of the defense." *Standard Mut. Ins. Co. v. Lay*, 989 N.E. 2d 591, 596 (Ill. 2013). "Rather, prejudice will be found if the insurer's assumption of the defense induces the insured to surrender her right to control her own defense." *Id; accord Home Ins. Co. v. Three I Truck Line, Inc.,* 95 F. Supp.2d 901, 906 (N.D. Ill. 2000).

This form of equitable estoppel is predicated on two concerns: first, the "insurer's conflict of interest: [the insurer] is too likely to be defending the insured in the lawsuit while at the same time formulating policy defenses to deny coverage," and second, "the fact that the insured is deprived of his right to control his defense." *Id*. (citations and quotation marks omitted). "It would also waste the time of the courts and the litigants to go through a trial expected to be dispositive only then to

discover the insurer is claiming a second bite at the apple in the form of a policy defense." *W. States Ins. Co. v. Weller*, 701 N.E.2d 542, 545 (Ill. App. Ct. 1998).

In the present case, because Essex defended the action from the beginning without a reservation of rights, this second type of estoppel is what applies.[10]

## B. Applying Equitable Estoppel to the Facts

To estop Essex from asserting the defense that its policy did not cover the claim, Blue Moon must identify, among other things, evidence that demonstrates that Essex's role in TSS's defense resulted in some prejudice to TSS. Blue Moon cannot simply point to the insurer's "assumption of the defense," *Lay*, 989 N.E. 2d at 596, but must instead identify "clear, concise, and unequivocal evidence" supporting that Essex's defense induced TSS to surrender control of its own defense. *See id.*; *Brochu*, 475 N.E.2d at 879. Courts have found such unequivocal evidence where the insurer had "assert[ed] total dominance over the underlying defense," by replacing the insured's chosen defense attorneys and "drastically chang[ing] [the insured's original] trial strategy." *Three I,* 95 F. Supp. 2d at 907–08. By contrast, a district court found that the insurer had not usurped control where the insurer's representative took the lead in settlement negotiations, but the insured's counsel was present and did not voice disapproval. *Great W. Cas. Co. v. Rogers Cartage Co.*, No. 00 C 6221, 2001 WL 1607608, at *8 (N.D. Ill. Dec. 12, 2001).

---

[10]     Blue Moon argues that both forms of estoppel apply to this case. *See* Blue Moon's Reply at 1, ECF No. 167. But it provides no examples of cases—nor could the Court find any such cases—that have applied contractual estoppel to circumstances where the insurer has defended the action from the beginning.

Blue Moon relies on the following evidence to demonstrate that Essex controlled the defense: the policy gave Essex the right to choose the attorney; Essex ratified Palandech as TSS's attorney; Palandech had previously served as counsel for TSS in other matters where Essex defended TSS; and Essex fired Palandech and hired another firm later in the case.

But Blue Moon has failed to identify any "clear, concise, and unequivocal evidence" of control by Essex.  First, while it is true that the insurance policy provided that Essex "shall select defense counsel," Insurance Policy at 18, there is no evidence to suggest that it did so.  First, it is undisputed that TSS had already engaged Palandech's firm to represent it in the underlying litigation, including seeking to vacate the default judgment.  Pl.'s LR Stmt. ¶ 2.  Palandech was also independently associated with TSS, as he served as TSS's registered agent at the time, and had previously represented TSS in other matters.  *Id.* ¶¶ 1, 2.  He testified that his relationship with TSS predated Essex.  Palandech Dep. at 137:17–24.

Moreover, Palandech advised TSS to wait on reporting the matter to Essex until after the order was vacated, Pl.'s LR Stmt. ¶ 7, and Essex was not notified of the matter until three months later, Blue Moon's LR Stmt. ¶¶ 8, 9.  And Palandech continued to represent TSS after Essex began defending the claim.  As such, it appears that Essex may have, at most, implicitly approved of TSS's choice of counsel, but this does not indicate that it controlled the defense.  Nor does the fact that Palandech had previously represented TSS in matters that Essex had

defended, s*ee Sheehan Dep. at 32:18–33:10, indicate anything other than that Essex allowed TSS to use its choice of attorneys.

What is more, there is no evidence of any situations where Essex advised or directed a litigation approach that differed from what Palandech recommended or TSS preferred, as was found to evince control in *Three I*. 95 F. Supp. 2d at 907–08. Instead, the undisputed evidence indicates that Palandech would first make a recommendation and then check in with TSS and Essex for the go-ahead. For example, Palandech relayed Blue Moon's May 2014 offer to settle the case for $25,000 to TSS and Essex, together with a recommendation to reject the offer and instead file a motion to dismiss. Blue Moon's LR Stmt. ¶ 17; Palandech Dep. at 80:7–82:9. Veach responded with the statement that he was "firmly a NO!", *see* Pl.'s LR Stmt. ¶ 19, and Brown told Palandech to "go ahead and file the motion to dismiss." Palandech Dep. at 86:22–87:2. Similarly, Palandech emailed TSS and Essex in November 2014, recommending that they file a petition for relief from final judgment; Essex simply agreed with the recommendation. Blue Moon's Mot. Summ. J., Ex. I, Sheaffer Email 11/11/2014, ECF No. 156-9; Blue Moon's Mot. Summ. J., Ex. I, Brown Email 11/11/2014, ECF No. 156-9.

While the above communications may indicate that Essex had the opportunity to assert control if it so desired, they fall far short of providing evidence from which a reasonable jury could conclude that Essex induced TSS to "surrender [its] right to control [its] own defense." *Lay*, 989 N.E. 2d at 596.

Essex did clearly assert control once the state court declined to vacate the March 5, 2015, order reinstating the default judgment. At that point, Essex

replaced Palandech's firm with new counsel. *See* Blue Moon's LR Stmt. ¶¶ 38, 39; *see also* Palandech Dep. at 22:23–10 (testifying that another firm was brought on after Palandech had filed the notice of appeal). But even if Essex took complete control of the case from TSS in March 2015, there were no material decisions left to be made in the case on which TSS and Essex could differ. The circuit court had already denied TSS's petition to vacate its earlier order. Pl.'s LR Stmt. ¶¶ 31, 32. Final judgment had entered. Essex issued a reservation of rights letter on March 26, 2015. *Id.* ¶ 34. Shortly thereafter, TSS apparently engaged in its own settlement proceedings, reaching an agreement with Blue Moon two months later. *Id.* ¶ 36.

Blue Moon has therefore failed to present any clear, concise, and unequivocal evidence that, during the relevant period of time, Essex controlled TSS's defense. But Blue Moon contends that Essex's actions prejudiced TSS in other ways. Namely, Blue Moon argues that, by defending the action for more than two years, Essex effectively misled TSS into believing it had coverage and, therefore, acting to its detriment. Blue Moon's Mem. at 12; Blue Moon's Reply at 5, ECF No. 167. In particular, Blue Moon points to Veach's agreement to reject the $25,000 settlement offer from Blue Moon. That decision, it contends, was made on the basis of Veach's "reasonabl[e] belie[f] that TSS would be indemnified if it lost the case." Blue Moon's Mem. at 12.

But Illinois law is clear that Blue Moon cannot simply point to the insurer's "assumption of the defense." *Lay*, 989 N.E. 2d at 596. Instead, it must identify clear, concise, and unequivocal evidence that Essex's provision of defense induced

TSS to surrender control of its own defense. *See id.* Speculation that the insured's decision might have been different if he had known that he might have to foot the bill for the case does not show that the insured surrendered control of the case. *See Stage 2*, 14 F.3d at 1182–83 (rejecting an argument that the insured would have settled the suit if it had controlled its own defense, where no evidence was presented that the insurer would have conducted the defense differently.)

Although the question of prejudice is generally a question of fact for the jury, it is properly decided by the judge on a motion for summary judgment if there is no factual basis from which a jury could find prejudice. *Am. States Ins. Co. v. Nat'l Cycle, Inc.,* 631 N.E.2d 1292, 1300 (Ill. App. Ct. 1994). Because the Court finds that Blue Moon has failed to present any clear, concise, and unequivocal evidence of prejudice, the Court grants summary judgment to Essex as to Blue Moon's affirmative defense of equitable estoppel.[11]

## II.    Waiver

Blue Moon next asserts an affirmative defense of waiver, contending that Essex's failure to timely raise any objections constituted a waiver of coverage defenses. Blue Moon's Am. Ans. at 6, 11. Essex now moves for summary judgment on this affirmative defense, on the basis that waiver cannot operate to create

---

[11]    Blue Moon also contends that Essex had actual or constructive knowledge that the claim by March 2013. But, because Blue Moon has failed to adduce facts from which a reasonable jury could find that it suffered prejudice, and prejudice is a requirement independent of knowledge to establish equitable estoppel, the Court need not decide this issue.

coverage under a policy where no coverage could have existed in the first place. Pl.'s Mem. at 8–9.

Waiver is the "express or implied voluntary and intentional relinquishment of a known and existing right." *Universal Fire & Cas. Ins. Co. v. Jabin*, 16 F.3d 1465, 1470 (7th Cir. 1994) (quoting *Nat'l Tea Co. v. Commerce & Indus. Ins,* 456 N.E.2d 206, 213 (Ill. App. 1983)). While "[a]n insurer may waive a policy defense by continuing under a policy when it knows, or in the exercise of ordinary diligence, could have known the facts in question giving rise to the defense," *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1100 (Ill. App. Ct. 2008) (citing *Nat'l Cycle*, 631 N.E.2d at 1298), waiver "may not be used to create or extend coverage where none exists." *Lytle v. Country Mut. Ins. Co.*, 41 N.E.3d 657, 663 (Ill. App. Ct. 2015) (citing *Schuster*, 30 N.E.3d at 468); *accord Fox v. Admiral Ins. Co.*, No. 12 CV 8740, 2016 WL 454319, at *4 (N.D. Ill. Feb. 5, 2016), *on reconsideration in part*, No. 12 CV 8740, 2016 WL 3520145 (N.D. Ill. June 28, 2016).

Based on the undisputed facts, the claim was first made in 2002, and therefore does not fall within the policy range, which covers claims made from May 10, 2012, to May 10, 2013. Blue Moon's LR Stmt. ¶ 6. Under Illinois law, waiver cannot apply to extend coverage to TSS for a claim made long before the policy took effect. The Court therefore grants summary judgment to Essex as to Blue Moon's affirmative defense of waiver.

## III. Bad-Faith Failure to Settle

Blue Moon also asserts an affirmative defense of bad-faith failure to settle, contending that Essex's "refusal to settle and refusal to advise TSS of the

consequences of its refusal to settle," while simultaneously failing to inform TSS that it did not intend to indemnify it of any adverse judgment, constituted negligence or bad faith. Blue Moon's Am. Ans. at 7, 12. Essex now moves for summary judgment on this affirmative defense.

The duty to settle "is a fiduciary duty which only arises when the insurer assumes the exclusive management and control of the insured's defense." *Transport Ins. Co., Inc. v. Post Exp. Co., Inc.*, 138 F.3d 1189, 1193 (7th Cir. 1998) (applying Illinois law); *see also Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 903 (Ill. 1996) ("The 'duty to settle' arises because the policyholder has relinquished defense of the suit to the insurer. The policyholder depends upon the insurer to conduct the defense properly.").

As the Court has already found that Blue Moon failed to present any evidence that TSS relinquished control of the case to Essex, the duty to settle cannot arise under these circumstances. Essex therefore is entitled to summary judgment as to Blue Moon's affirmative defense of bad-faith failure to settle.

Count I of Essex's Amended Complaint asserts that the policy does not provide coverage for TSS's insurance claim because the claim arose outside of the policy period. Am. Compl. ¶ 35. Because there is no dispute that the insurance claim arose outside of the policy period and the Court has granted summary judgment in Essex's favor on all of Blue Moon's affirmative defenses, the Court grants summary judgment to Essex and declares that Essex does not owe a duty to indemnify TSS (and, by extension, Blue Moon) for the default judgment entered in the underlying litigation on December 15, 2009.

## Conclusion

For the foregoing reasons, the Court grants Essex's motion for summary judgment [157] and denies Blue Moon's motion for summary judgment [156]. The Court hereby declares that Essex Insurance Company has no duty to indemnify The Structural Shop for the default judgment entered in the underlying litigation on December 15, 2009. Status hearing set for May 8, 2018 at 9:00 a.m.

**IT IS SO ORDERED.**          **ENTERED   3/21/18**

_____
**John Z. Lee**
**United States District Judge**